**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher P. Dallas,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>　　　　　　Defendant. | No. CV-13-02044-PHX-JZB<br><br>**ORDER** |

Plaintiff Christopher P. Dallas seeks review of the Social Security Administration Commissioner's decision denying his application for disability benefits under Title II of the Social Security Act. (Doc. 1; Doc. 21.) Defendant concedes error and requests that the Court remand this case for further proceedings. (Doc. 26; Doc. 27.) For the reasons below, the Court will reverse the decision of the Commissioner and remand this case to the Social Security Administration for an award of benefits.

**I.　Background**

On July 28, 2009, Plaintiff filed an application for disability benefits under Title II of the Social Security Act. (AR[1] 14.) Plaintiff alleged that he became unable to work on January 1, 2007,[2] due to a variety of conditions, including headaches, bipolar disorder, organic mental disorder, and anxiety related disorder. (*Id.* at 14, 16, 205.) On February 24, 2010, the Social Security Administration denied Plaintiff's application. (*Id.* at 14.)

---

[1] Citations to "AR" are to the administrative record.

[2] Plaintiff subsequently amended the onset date to July 1, 2008. (*Id.* at 14.)

On August 26, 2010, the Social Security Administration denied Plaintiff's request for reconsideration. (*Id.*) Pursuant to Plaintiff's request, a hearing was held on January 31, 2012, before Administrative Law Judge ("ALJ") Earl C. Cates, Jr. (*Id.* at 14, 22.) In a decision dated February 17, 2012, the ALJ ruled Plaintiff is not entitled to disability benefits because he was "not disabled under sections 216(i) and 223(d) of the Social Security Act through June 30, 2011, the last date insured." (*Id.* at 22.) In August 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision became the final decision of the Commissioner of the Social Security Administration. (*Id.* at 1-10.)

Having exhausted the administrative review process, on October 8, 2013, Plaintiff sought judicial review of the ALJ's decision by filing a Complaint in this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1.) On June 19, 2014, Plaintiff filed an Opening Brief, seeking remand of this case to the Social Security Administration for an award of disability benefits. (Doc. 21.) On August 20, 2014, Defendant filed a Motion to Remand, agreeing that the ALJ committed legal error, but requesting that the Court remand this matter for further proceedings. (Doc. 26; Doc. 27.) On September 26, 2014, Plaintiff filed a Response to Defendant's Motion, again arguing that remand for an award of benefits is appropriate. (Doc. 30.) Defendant has not filed a Reply and the time to do so has passed.

**II.    Analysis**

    **a.  TheALJ erred in rejecting the opinions of Dr. Larry J. Cowley and Dr. Steven Hirdes.**

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting the medical opinions of Dr. Cowley, treating psychiatrist, and Dr. Hirdes, examining psychologist, regarding Plaintiff's mental impairments and, in doing so, committed legal error. (Doc. 21 at 12-25); *see also Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)) ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific

and legitimate reasons that are supported by substantial evidence."); *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.").

In its Motion to Remand and supporting Memorandum, Defendant concedes that "the ALJ's decision was ultimately deficient," but Defendant does not specify whether it agrees that the ALJ erred in each way identified by Plaintiff in his Opening Brief. (Doc. 26; Doc. 27.) However, based on Defendant's request to remand this matter to, among other things, accord "appropriate weight to the opinion evidence of record," and Defendant's failure to contest Plaintiff's assertions that the ALJ erred in weighing the opinions of Dr. Cowley and Dr. Hirdes, the Court assumes that Defendant concedes the ALJ erred in rejecting the opinions of both physicians. (Doc. 21; Doc. 26.)

Based on its review of the record, the Court accepts Defendant's concession of error regarding the ALJ's rejection of Dr. Cowley's and Dr. Hirdes' medical opinions. Having determined that the ALJ erred in weighing medical source evidence, the only remaining issue for the Court is whether to remand this case for an award of benefits or for further proceedings.[3]

### b. Remand for an award of benefits is appropriate.

If the ALJ's decision is not supported by substantial evidence or suffers from legal error, the court has discretion to reverse and remand either for an award of benefits or for further administrative proceedings. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Under the Ninth Circuit's credit-as-true standard, courts may credit as true improperly rejected medical opinions and remand for an award of benefits if each of the following are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to

---

[3] Plaintiff also argues in his Opening Brief that the ALJ erred in rejecting treating physician Dr. Sharonelle Simmons' opinions, Plaintiff's testimony, and lay witness testimony by Plaintiff's parents. (Doc. 21 at 23-26.) However, in light of Defendant's concession of error with respect to Dr. Cowley's and Dr. Hirdes' opinions, the Court need not address the other errors alleged by Plaintiff.

provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citing *Ryan*, 528 F.3d at 1202, *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007), *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007), *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004), and *Smolen*, 80 F.3d at 1292). If the "credit-as-true rule" is satisfied, the Court may remand for further proceedings, instead of for an award of benefits, only "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021.

### i. When appropriately credited as true, the opinions of Dr. Cowley and Dr. Hirdes require the ALJ to find that Plaintiff is disabled.

Defendant argues that "further proceedings would be useful for the purpose of further development of the record and the resolution of outstanding issues." (Doc. 27 at 4.) Defendant asserts that the ALJ's development of the evidence was deficient and, on remand, the Appeals Counsel will direct the ALJ to do the following:

> obtain any additional evidence relevant to the period prior to Plaintiff's date last insured (June 30, 2011); obtain evidence from an appropriate medical expert to assist in providing a longitudinal overview of Plaintiff's medically determinable mental impairments throughout the period at issue; further evaluate Plaintiff's mental impairments at steps 2 and 3 of the sequential evaluation process; further evaluate Plaintiff's subjective complaints and further consider Plaintiff's maximum residual functional capacity, according appropriate weight to the opinion evidence of record in accordance with the applicable regulations; and obtain supplemental vocational expert evidence, as warranted.

(Doc. 27 at 2-3.)

However, Defendant fails to identify with specificity what additional evidence is needed or what "outstanding issues" remain regarding Plaintiff's limitations. The record includes Plaintiff's medical records from the relevant time period, as well as opinions from treating, examining, and consulting sources. Further, a vocational expert testified at

- 4 -

Plaintiff's hearing regarding Plaintiff's limitations as identified by Dr. Cowley and Dr. Hirdes. Given the evidence in the record regarding Plaintiff's mental impairments, there are no outstanding issues present here that require a remand for further proceedings. *See Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1101 (9th Cir. 2014) (noting that a remand for further administrative proceedings is generally useful where the record has not been fully developed, there are outstanding conflicts and ambiguities to be resolved, or the presentation of further evidence may "prove enlightening").

Defendant's request for remand to allow the ALJ to "reevaluate" Plaintiff's impairments at steps 2 and 3 and accord the appropriate weight to the medical evidence seeks an opportunity for the ALJ to reweigh the evidence that was already before him. Such a remand is not for a "useful purpose." *Garrison*, 759 F.3d at 1021 ("[T]he objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis."); *see also Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility.").

Defendant also asserts that a remand for further proceedings is appropriate because "Congress empowered the Commissioner to 'make findings of fact, and decisions as to the rights of any individual applying for [disability benefits.]'" (Doc. 27 at 5.) However, as the Ninth Circuit Court recently reiterated, "[w]here there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony.

1  Rather, we will . . . take that testimony to be established as true." *See Garrison*, 759 F.3d 1019-20 (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988)).

Defendant does not dispute that the other two prongs of the credit-as-true test are satisfied here.  The Court agrees with both parties that the ALJ's decision contains error regarding the weight given to the medical opinions of Dr. Cowley and Dr. Hirdes.  (Doc. 21; Doc. 26; Doc. 27.)  When these opinions are credited as true, the following facts are established.  Plaintiff suffers from an impairment that seriously affects his ability to do the following on a sustained basis in a routine work setting:  (1) understand, carry out, and remember instructions; (2) respond to customary work pressures; (3) perform complex tasks; and (4) perform repetitive tasks.  (AR at 647-48.)   These limitations have "lasted or can be expected to last for 12 months or longer."  (*Id.* at 648.)

Additionally, Plaintiff's judgment and insight are in the "fair" to "poor" range. (*Id.* at 386.)  Plaintiff is in the "low" to average range of intellectual functioning, with scores also indicating neuropsychological impairment.  (*Id.* at 389.)  Plaintiff's processing speed is an area of "significant impairment and weakness."  (*Id.* at 387.) Plaintiff has "severe" impairments "in all areas associated with memory functions." (*Id.* at 388.)  Plaintiff will have "severe difficulty acquiring new information adequately, regardless of the type of teaching format employed."  (*Id.*)  Plaintiff is likely "unable to manage the necessity of ongoing social interaction successfully at the present time." (*Id.* at 389.)   Plaintiff has moderate to severe impartments in his ability "to adjust to necessary changes within working environments" and "he will require high levels of supervisory assistance and monitoring."  (*Id.* at 390.)  These limitations have or will last 12 months.  (*Id.* at 389.)

Given these restrictions and the testimony of the vocational expert at Plaintiff's hearing (AR 93-96), Plaintiff does not have the ability to work.  Thus, when the improperly discredited evidence is credited as true, the ALJ would be required to find Plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020.

### ii. The record as a whole does not create "serious doubt" as to whether Plaintiff is disabled.

In its Motion to Remand, Defendant argues that even if the Court finds each prong of the "credit-as-true rule [is] satisfied, a remand for further proceedings is nonetheless warranted because an evaluation of the record as a whole creates doubt that Plaintiff is disabled." (Doc. 27 at 6.) Specifically, Defendant asserts that although "the ALJ's decision was ultimately deficient," there is evidence in the record "that could support the ALJ's findings." (*Id.*)

In support of this argument, Defendant states that "longitudinal mental health treatment notes showed Plaintiff's providers regularly and consistently rated his Global Assessment of Functioning (GAF) at about 60." (*Id.*) As discussed by the Ninth Circuit Court in *Garrison*:

> A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). According to the DSM-IV, a GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." A GAF score between 51 to 60 describes "moderate symptoms" or ["]any moderate difficulty in social, occupational, or school functioning." Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement. We note, however, that GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects. *See, e.g., Titles II & XVI: Capability to Do Other Work-Themedical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15, 1985 SSR LEXIS 20, 1983-1991 Soc. Sec. Rep. Serv. 343 (S.S.A 1985) ("The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day.").

759 F.3d at 1003 n.4. The record shows that Plaintiff received a GAF score of 58 in early July 2009, a score of 60 in late July 2009, scores of 60 in August, September, November, and December 2009, scores of 60 in February and March 2010, and most recently a score

of 50 in January 2012.  (AR 481, 479, 478, 477, 476, 475, 474, 473, 631.)  As stated in *Garrison*, Plaintiff's GAF scores, alone, are not dispositive of Plaintiff's ability to work.  *See Garrison*, 759 F.3d at 1003, 1005 (remanding for benefits where the plaintiff's GAF was at one point 55-60, and subsequently decreased to 50).

Further, the same records that show Plaintiff received GAF scores of around 60 also reflect that Plaintiff continued to suffer severe symptoms related to his mental impairments.  For example, Defendant cites to AR 479, a July 22, 2009 note from Psychiatric Mental Health Nurse Practitioner Rose Garduno, stating that Plaintiff reported his mood improved.  (Doc. 27 at 6.)  Less than one month later on August 19, 2009, however, Ms. Garduno noted that Plaintiff reported his "mood has been depressed" and he feels rundown.  (AR 478.)  Similarly, in September 2009, Plaintiff reported that he "continues to have depression and mood swings" and while he reported these symptoms "were not quite as bad as before," they were "still prominent."  (*Id.* at 477.)  In fact, Ms. Garduno increased Plaintiff's dosage of Seroquel and added Bendaryl at that time.  (*Id.*)  Likewise, in February 2010, Plaintiff reported that "he is more depressed," he continues to have anxiety, and "is on the verge of a panic attack."  (*Id.* at 474.)  Accordingly, these records cited by Defendant do not create "serious doubt" that Plaintiff is disabled.  *See Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

Defendant further argues that "consistent with the ALJ's finding that Plaintiff's allegations were not entirely credible, the record contained evidence that Plaintiff was not always candid."  (Doc. 27 at 6.)  In support, Defendant cites to AR 485, which states that in June 2009, Plaintiff requested a new provider because he disagreed with the medication his then-current provider prescribed.  The same record also notes that Plaintiff stated he "was not fully truthful" in his initial evaluation, and he "didn't tell" his provider "everything."  (AR 485.)  The Court finds that this one record does not create "serious

doubt" as to whether Plaintiff is disabled.  Plaintiff's vague comment in 2009 does not support the assertion that he was later untruthful in describing his symptoms, particularly in light of the treating and examining opinions and other records that support the severity of his symptoms.  (*See, e.g.*, *Id.* at 384-391, 472-489, 517-603, 617-31, 647-48.)

Defendant also argues that the ALJ's determination regarding Plaintiff's ability to work is supported by the fact that "Plaintiff's treatment was essentially routine and conservative."  (Doc. 27 at 7.)  Defendant states that in April 2010, "Plaintiff's neurologist observed that a past occipital nerve block had worked to control Plaintiff's headaches for some time and '[c]urrently [Plaintiff] only takes Imitrex on average once a week.'"[4] (*Id.*) Defendant also notes that in the same records, Plaintiff's neurologist recommended an additional occipital nerve block, but Plaintiff declined, stating that he preferred to use ice and Imitrex when needed.  (*Id.*)

"'[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.'"  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).  An inadequately explained failure to pursue prescribed treatment can also be a sufficient reason to discredit a claimant's symptom testimony.  *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). However, even if Plaintiff failed to pursue more aggressive treatment recommended by his physician with regard to his headaches, there is no evidence in the record that Plaintiff failed to pursue prescribed treatment for his mental impairments.  To the contrary, the record shows that Plaintiff sought medical treatment and counseling, was referred to specialists for care, and was prescribed strong medications, including Seroquel, Zoloft, and Temazepam.  (AR 311-32, 472-485, 517-603, 613-31.)

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Remand (Doc. 26) is granted as

---

[4] The ALJ likewise asserted that Plaintiff's treatment was "conservative," citing only to the fact that Plaintiff was taking Imitrex "as needed."  (AR 18-19.)

- 9 -

provided in this Order.

**IT IS FURTHER ORDERED** that the final decision of the Commissioner of the Social Security Administration is reversed and this case is remanded for an award of benefits. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 6th day of March, 2015.

Honorable John Z. Boyle
United States Magistrate Judge